JUSTICE RICE
concurring in part and dissenting in part.
¶96 I concur with the Court’s holding that Good was not denied a speedy trial, but dissent from the holding that Good is entitled to a new trial due to the District Court’s denial of Good’s challenges for cause.
*139 ¶97 I concur with Justice Trieweiler’s discussion on the proper analysis to be employed to our review of district court rulings on cause challenges. A district court’s error in denying a challenge for cause constitutes neither pre-trial structural error (exemplified by the violation of jury summoning statute in LaMere) nor trial error (exemplified by the admission of tainted evidence in Van Kirk), as definitions of those errors are set forth in Van Kirk. Rather, challenges for cause are reviewed under a unique deferential abuse of discretion standard. If abuse of that discretion is found, it remains appropriate in criminal cases to inquire whether the jury was charged with determining factual issues that could have been affected by the error, as the Court recently established in DeVore. Failure to retain the DeVore standard will result in some reversals that will serve no purpose whatsoever-aptly described by Justice Trieweiler as the inevitable result of an “appellate straight jacket” standard of review. That said, I would not reach the issue over which standard to apply in the wake of a district court’s error in denying a challenge for cause, as I find no such error in this case.
¶98 This Court has gone to great lengths to defer to district courts’ decisions in these matters. “Because the trial court is best able to observe the jurors and to decide the potential for prejudice ... the trial court has significant latitude when ruling on such matters. [Citation omitted.] This Court gives the trial court’s determination considerable weight and will defer to that determination ....” State v. Hatten, 1999 MT 298, ¶ 28, 297 Mont. 127, ¶ 28, 991 P.2d 939, ¶ 28 (emphasis added). While Hatten dealt with alleged juror misconduct, our deference there to the district court’s personal observations is equally applicable in the context of this case.
¶99 After reviewing the respective colloquies between the judge and panelists Gregory and Acheson, the Court concludes that “[t]he District Court abused its discretion when it chose to ignore the prospective jurors’ spontaneous and honest statements indicating that they could not be impartial in favor of its own attempt to rehabilitate the jurors.” ¶ 55. This conclusion inaccurately summarizes both the answers given by the panelists and the efforts of the trial judge.
¶100 It should first be noted that neither panelist Gregory nor panelist Acheson indicated that they would not presume Good innocent when that question was posed to the panel as a whole. Furthermore, neither of them indicated that they could not be impartial, as the Court asserts. A more accurate assessment is that the panelists expressed uncertainty about acting impartially, and it was that *140 uncertainty-not expressions of partiality-which the judge attempted to clarify.
¶101 Panelist Gregory’s answer to defense counsel, set forth at ¶ 45, was not definitive, but expressed her tendency to believe a victim. After being asked whether she could withhold forming an opinion until after the evidence was presented, she indicated “I would try.” When the judge intervened to clarify her answer, Gregory rebutted the judge’s assumption that perhaps she had already made up her mind: “No, I haven’t made up my mind, but I would have a hard time.” When the judge asked whether she was predisposed to a conviction, she again declined that assessment. To assist her, the judge then provided an accurate explanation of the process, but did not engage in an effort to dissuade her from a preconceived belief, which this Court criticized in DeVore. Finally, the judge asked: “I don’t care what they allege, they better prove each and every one of these. Do you think you could be of that frame of mind?” To this panelist Gregory answered clearly and positively that she could so act.
¶102 Similarly, panelist Acheson, after expressing assent to the notion of Good’s innocence, asked her own question: “I guess what I worry about is if I have to err on one side or the other, I’m not sure which way to go. What do I do?” In response to this very good question about the duty of a juror, the judge accurately explained that any error must be made in the defendant’s favor. Acheson then indicated that, notwithstanding the difficulty in the process, she could act dispassionately and apply the law as given.
¶103 Panelists come to trials with a variety of experiences, values and opinions. The purpose of voir dire is to expose these feelings to the court, as well as to explain the trial process and the role of jurors to act impartially, and to determine, given that role, whether jurors could so act. Voir dire need not be a reactionary process which eliminates all panelists who honestly offer any doubt, whether about themselves or about the process. New panelists come to the process with a full understanding of the juror’s duty, or of their ability to perform it. Instead of rigidly dismissing panelists who have questions about the process, courts should ensure that their doubts are respectfully discussed, and if credibly and properly resolved, allow them to remain on the panel. If not resolved credibly and properly, then they should be dismissed from the panel.
¶104 The cold, dry transcript leaves room for argument on these challenges made in this case. However, the transcript fails to reveal the appearance, demeanor, tone of voice, attitude, reactions, body *141 posture and facial expressions of the panelists. For good reason, our law requires deference to the trial judge’s personal observation of these indicators. I find the combination of a prospective juror’s statements, made under oath, and a district judge’s observation of these indicators far more reliable then the Court’s perceptions of “human nature.” ¶ 55. Applying the appropriate standard of review, I would find no abuse of discretion. A review of the record reveals that the District Court conducted voir dire very carefully in this matter, excusing three jurors for cause prior to addressing the concerns raised by juror Gregory and juror Acheson. I would affirm the conviction herein.